Mountain View v. St. Paul's          CV-94-150-B    10/26/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Mountain View Nursing Home
of Carroll County

    v.                          Civil No. C-94-150-B

St. Paul's Fire & Marine
Insurance Company


**MEMORANDUM AND ORDER**

Mountain View Nursing Home petitioned for declaratory judgment against its insurance company, St. Paul's Fire & Marine Insurance Company, after being sued by a former employee who claims that she was the victim of discrimination because of her disability. The insurance policy in question obligates St. Paul's to defend and indemnify Mountain View only for bodily injury claims that result from an "accident." New Hampshire law recognizes that conduct is not accidental if either the insured intends to cause the resulting injury, or the insured's intentional acts are inherently injurious. Here, the underlying complaint alleges that Mountain View engaged in intentional conduct that would inevitably injure its former employee. Accordingly, I conclude that Mountain View's conduct was not

accidental, and I grant St. Paul's motion for summary judgment.

## I. FACTS

### A. The Underlying Complaint

Elizabeth Kenney was employed by Mountain View as a certified nurse's aid from 1979 until 1988. She alleges in her complaint in the underlying action that she suffers from an unspecified neurological disorder and severe recurring depression. She claims that she was discharged because of her condition when she attempted to return to work after taking a medical leave of absence. She also claims that she was subjected to unlawful pre-employment medical and psychiatric evaluations because of her disability and that Mountain View refused to consider her for re-employment even after the evaluations established that she could return to work. As a result, Kenney claims that Mountain View violated her rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp. 1994).

### B. The Insurance Policy and the Present Action

St. Paul insured Mountain View from March 6, 1988, through March 6, 1989. The policy provides liability coverage for bodily injury sustained as a result of an "event." An event is defined

2

as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions."  The policy
does not define the term "accident."

St. Paul's denied Mountain View's request for a defense and
indemnification in the underlying action because, among other
things, it claimed Kenney's injuries were not caused by an
"accident."  Mountain View brought this declaratory action after
St. Paul's denied its request for coverage.  Both parties move
for summary judgment.

## II.  DISCUSSION[1]

In Vermont Mutual Insurance Co. v. Malcolm, the New
Hampshire Supreme Court determined that the term "accident" in a
liability insurance policy means "an undesigned contingency,

---

[1] **In ruling on the parties' cross-motions for summary
judgment, I am guided by the following standard.  Summary
judgment is appropriate when "there is no genuine issue as to any
material fact and . . . the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  The burden is on
the moving party to establish the lack of a genuine, material
factual issue,** Finn v. Consolidated Rail Corp., 782 F.2d 13, 15
(1st Cir. 1986), and the court must view the record in the light
most favorable to the nonmoving party.  Caputo v. Boston Edison
Co., 924 F.2d 11, 13 (1st Cir. 1991).  Once the moving party has
made a properly supported motion for summary judgment, however,
the adverse party "must set forth specific facts showing that
there is a genuine issue for trial."  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)).

4

. . . a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected."  128 N.H. 521, 523, 517 A.2d 800, 802 (1986) (quoting Guardian Indus. Inc. v. Fidelity & Casualty Co., 271 Mich. 12, 18-19, 123 N.W.2d 143, 147 (1963)).  The Court held that "an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results . . . [or] when it is so inherently injurious that it cannot be performed without causing the resulting injury." Id. at 523-24.

Two years later, in Jespersen v. U.S. Fidelity & Guaranty Co., 131 N.H. 257, 260, 551 A.2d 530, 532 (1988), the court considered whether an employer's allegedly wrongful termination of an employee qualified as an "accident" entitling the employer to insurance coverage.  In rejecting the coverage claim, the court held that whether an intentional act is deemed to be an accident must be determined from the insured's perspective.  Id. Judged by this standard, the court concluded that the termination was not an accident because someone in the employer's position should have known that an injury would inevitably result from the intentional discharge of an employee who had co-founded the business and been allowed to live on the business premises as a

5

part of his employment benefits.  <u>Id.</u>

The employee Mountain View allegedly discharged was not a co-founder of the business.  Nor was she allowed to live on the business premises before she was discharged.  Nevertheless, I conclude that the present case is indistinguishable from <u>Jespersen</u>.  Here, as in <u>Jespersen</u>, the employee alleges that she was wrongfully terminated from a job she had held for several years.  She also claims that she valued her job enough to seek re-employment and that she was again subjected to unjustified discrimination when she was refused re-employment solely because of her disability.  An employer's unlawful discharge and refusal to rehire an employee under such circumstances will inevitably injure the employee.  Thus, it is precisely the type of intentional conduct that the <u>Jespersen</u> court recognized could not be accidental.

Mountain View argues that its alleged conduct was accidental notwithstanding <u>Jespersen</u> because the employee does not allege in her complaint that Mountain View intentionally discriminated against her on the basis of her disability.  In making this argument, Mountain View misconstrues <u>Malcolm</u> and its progeny. Intentional conduct does not become accidental merely because the person who engages in the conduct does not intend to

6

discriminate.  <u>Loyola Marymount University v. Hartford Accident</u> <u>and Indemnity Company</u>, 271 Cal. Rptr. 528, 532 (Cal. Dist. Ct. App. 1990) ("an intentional discharge or application of an employment policy does not become an accidental occurrence even if it has only an unintended federally prohibited discriminatory effect"); <u>see also</u> <u>American Guar. & Liab. Ins. Co. v. Vista</u> <u>Medical Supply</u>, 699 F. Supp. 787, 791-92 (N.D. Cal. 1988).  Here, the employee alleges that Mountain View intentionally discharged her, subjected her to pre-employment screening and refused to consider her for re-employment.  Because I have determined that Mountain View's acts were inherently injurious under New Hampshire law, the conduct alleged in the underlying complaint will not qualify as an accident regardless of whether Mountain View intended to discriminate against the employee on the basis of her disability.

## III.  CONCLUSION

For the foregoing reasons, defendant St. Paul's motion for summary judgment (document no. 5) is granted and plaintiff Mountain View's motion for summary judgment (document no. 6) is

7

denied.

SO ORDERED.

                                             _____
                                             Paul Barbadoro
                                             United States District Judge

October 26, 1994

cc:  Edward A. Haffer, Esq.
      Robert R. Lucic, Esq.
      Julie Ann Boyle, Esq.